**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| J. Steven Manning, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 09-03190 |
| | : | |
| v. | : | |
| | : | |
| Thomas T. Flannery, Stacey Holland, | : | |
| Interim Management Associates, LLC | : | |
| d/b/a Boyden and/or Boyden Interim | : | |
| Management, and Resources for | : | |
| Management, Inc. d/b/a Boyden and/or | : | |
| Boyden Global Executive Search | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM</u>**

BUCKWALTER, S.J.                                                          January 6, 2010

Currently pending before the Court is Defendants' Motion to Dismiss or Transfer for

Lack of Venue.  For the reasons stated below, the Defendants' Motion to Dismiss is denied, and

their Motion to Transfer is granted.

## I.      FACTUAL BACKGROUND

Plaintiff's claim stems from the alleged tortious conduct of Defendants Thomas T.

Flannery, Stacey Holland, and Boyden Global Executive Search[1] (collectively "Boyden

Defendants") that led to Plaintiff's firing and inability to obtain future employment.  (Compl.

Intro.)   Plaintiff, J. Steven Manning ("Manning"), entered into a written Executive Employment

Agreement ("Employment Agreement") with Ardex, L.P., ("Ardex") a building  materials

---

[1] Boyden Global Executive Search is the title this Court will use for the purposes of this Opinion to refer to the following corporate entities:  Interim Management Associates, LLC d/b/a Boyden and/or Boyden Interim Management, and Resources for Management, Inc. d/b/a Boyden and/or Boyden Global Executive Search.

1

company, on or about January 31, 2005.  (Id. ¶ 9.)  The Employment Agreement – along with certain amendments – provided that Plaintiff would serve as the President and Chief Executive Officer of Ardex through December 31, 2009. (Id.)  Ardex utilized Boyden Defendants' executive and management search services in hiring Plaintiff as their CEO, and Plaintiff alleges that Boyden Defendants "were fully aware of the terms and conditions of the Employment Agreement."  (Id. ¶ 10.)   The Employment Agreement contained a non-compete clause, which would restrict Plaintiff from working for an Ardex competitor for a period of one year if Plaintiff were fired for cause.  (Id. ¶ 13.)

### A. Events Leading to the Firing of Plaintiff[2]

In early October, 2007, Ardex engaged Boyden Defendants to conduct a search for a new Vice President of Operations for Ardex. (Id. ¶ 24.)  A "Letter Agreement" sent to Plaintiff formalized the approach Boyden Defendants would take to conduct the employment search.  (Id.) Additionally, Flannery and Holland informed Plaintiff that they would keep Plaintiff informed of the progress of their search.  (Id.)

Plaintiff alleges that Boyden Defendants – in the course of their search – "engaged in a scheme and conspiracy to secretly undermine and poison the plaintiff's employment and employment prospects with Ardex, and his reputation, both personal and professional."  (Id. ¶ 25.)  In other words, Boyden Defendants intended "to undermine the [P]laintiff in his capacity as President of Ardex and to cause his firing."  (Id. ¶ 27.)  According to Plaintiff, the Boyden Defendants enacted this scheme by making defamatory statements to Dieter Gundlach, the

---

[2] The facts in this section largely are taken from the Complaint, as at this stage in the proceeding, the Court accepts Plaintiff's allegations as true and resolves all factual disputes in favor of Plaintiff.  See infra Part III.

"managing director" of Ardex parent corporation Ardex GmbH, and to Hugh Nevins, an attorney and Secretary of the Ardex Board of Directors, for "eventual dissemination to Dieter Gundlach." (Id. ¶¶ 23, 27.)[3]  Boyden Defendants "were improperly motivated by, inter alia, personal animus against Manning and by a desire to insinuate themselves . . . to their financial benefit[] with Gundlach [and] at the expense of Ardex and [Plaintiff]."  (Id. ¶ 28.)  As a result of the Boyden Defendants' false statements, Gundlach decided to fire Plaintiff "with cause" on or about March 11, 2008 for purportedly interfering with Boyden Defendants efforts to hire a vice-president of operations for Ardex.  (Id. ¶¶ 13, 28, 30.)

After firing Plaintiff pursuant to the Employment Agreement, Ardex insisted that the non-compete clause bound Plaintiff.  (Id. ¶¶ 15, 16.)  In turn, Plaintiff  "was prevented from obtaining employment within the Eastern District of Pennsylvania as one or more prospective employers . . . would not hire [Plaintiff]" given the threat of litigation.  (Id. ¶ 18.)  Boyden Defendans, aware of the non-compete clause from having negotiated Plaintiff's Employment Agreement, "knew and planned that the Plaintiff, as a consequence of [Boyden] Defendants actions, would be unable to obtain employment within the Eastern District of Pennsylvania and that [Plaintiff] would be harmed thereby."  (Id. ¶ 20.)  Boyden Defendants thus intended for their actions to result in Ardex's termination of Plaintiff as well as Plaintiff's loss of earnings from Ardex and other prospective employers.  (Id. ¶ 38.)

### B. Boyden Defendants' Contacts with the Eastern District of Pennsylvania

Boyden, a multinational corporation with offices located throughout the world, is engaged primarily in conducting executive and management searches on behalf of other

---

[3] In his Complaint, Plaintiff details the specific statements and circumstances.  For the purposes of the Motion presently before it, the Court need not delve into these particular facts.

corporations.  (Defs.' Mot. Dismiss, Intro.; Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 7.)  Boyden

has no office in Philadelphia, or elsewhere in the Eastern District of Pennsylvania for that matter,

but maintains an office in Pittsburgh, located in the Western District of Pennsylvania.  (Defs.'

Mot. Dismiss, Intro.)  As represented on Boyden's website, the Pittsburgh office "serves the

entire mid-Atlantic and Midwest regions" in collaboration with other Boyden offices.  (Pl.'s

Mem. Opp'n Defs.' Mot. Dismiss 7.)  The Pittsburgh office's clients are located primarily in

Western Pennsylvania, upstate New York, Ohio, and West Virginia.  (Defs.' Mot. Dismiss §

III.A.)  Stacey Holland and Thomas Flannery, the two individual Defendants in this case, are

based in Boyden's Pittsburgh office, and their office address is the only address Plaintiff has

provided for them.  (Compl. ¶¶ 2-3.)

Boyden Defendants submitted an Affidavit from Flannery addressing Boyden's contacts

with the Eastern District.  In his Affidavit, Flannery attests that "[t]he Pittsburgh office does not

solicit business in the Eastern District, nor does it target advertisements to persons or companies

within the Eastern District or obtain a substantial amount of its business, including gross

revenue, from the Eastern District (less than 2% of gross revenues)."  (Defs.' Mot. to Dismiss,

Ex. A, Flannery Aff. ¶ 9.)  Flannery further swears that "Boyden's Pittsburgh office has made

approximately five interview trips to Philadelphia in the last year, a number that is consistent

across most years, out of usually more than 400 interviews in any given year."  (Id. ¶ 11.)

Additionally, "Boyden's Pittsburgh office has one former client in Philadelphia, [for] which

Boyden conducted a Director search for their board last year."  (Id. ¶ 12.)  Moreover, "Boyden's

Pittsburgh office does not purposely direct its activities towards residents in Philadelphia/Eastern

District[,]" nor does it have any "current clients, activities or business in the Eastern District[.]"

4

(Id. ¶¶ 6, 13.)  Ardex, a Boyden client and Plaintiff's former employer, is also located in the

Pittsburgh vicinity.

    While nearly all communications and actions relating to Plaintiff's firing originated or

were directed towards the Pittsburgh area, Plaintiff alleges that Boyden Defendants intended to

and did cause harm to the Plaintiff in the Eastern District.  (Compl. ¶ 20.)  Specifically, Plaintiff

alleges that Boyden Defendants knew of the non-compete clause and intended to bring about

Plaintiff's firing, while utilizing the clause to prevent Plaintiff from obtaining new employment.

(Id.)

    Plaintiff also contends that Flannery and Holland "purposely made substantial contacts

within [the Eastern District of Pennsylvania] by purporting to enter into a 'Joint Defense

Agreement' with Ardex" in Plaintiff's prior action against Ardex in the Eastern District.  (Pl.'s

Mem. Opp'n Defs.' Mot. Dismiss 5.)  Plaintiff alleges that this "Joint Defense Agreement" was a

"ploy" that compromised Plaintiff's attempts to gather evidence in his previous employment

dispute in this District against Ardex, and as such, Plaintiff contends that Boyden Defendants'

actions give rise to proper venue in the Eastern District.  (Compl. ¶ 6.)

## II.    PROCEDURAL BACKGROUND

    Prior to the current action, Plaintiff filed with the Court a Complaint and a Motion for

Preliminary Injunction against his former employer, Ardex, on April 11, 2008.  See Complaint,

Manning v. Ardex, No. 08-1746 (E.D. Pa. April 11, 2008).  Ardex responded with a Motion to

Dismiss, Compel Arbitration, and Transfer Venue on August 25, 2008.  After receiving the

parties' Motions, the Court issued a Memorandum and Order denying Ardex's Motion to

Dismiss, Compel Arbitration and to Transfer Venue.  See Manning v. Ardex, No. CIV.A.08-

1746, 2008 WL 2468690, at *1 (E.D. Pa. June 16, 2008).  Manning and Ardex eventually

reached a settlement resolving this dispute.  Upon stipulation by the parties, the Court dismissed

the case with prejudice on December 19, 2008.

Invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332, Plaintiff filed the current

Complaint against the Boyden Defendants on July 17, 2009.  The Complaint sets forth the

following claims: (1) intentional interference with existing contractual relationships; (2)

intentional interference with existing business relationships; (3) intentional interference with

prospective business relationships; (4) libel; (5) slander; (6) breach of fiduciary duty and/or duty

arising pursuant to a confidential relationship; and (7), negligence.  (Compl. ¶¶ 40-61.)

Boyden Defendants responded with a Motion to Dismiss Plaintiff's Complaint or in the

Alternative, Transfer Venue on September 21, 2009.  On October 08, 2009, Plaintiff filed his

Response in Opposition.  Boyden Defendants submitted their Reply Brief on October 20, 2009,

followed by Plaintiff's Sur-Reply Brief on October 27, 2009.  Subsequently, on December 15,

2009, Boyden Defendants filed a Sur-Reply Brief in Further Support of their Motion, and in turn,

Plaintiff filed a Reply to Defendants' Sur-Reply on December 29, 2009.

## III.    STANDARD OF REVIEW

In the Third Circuit, "[t]he defendant bears the burden of demonstrating that venue is

improper[.]"[4]  The Court, in considering a motion to dismiss for improper venue, must generally

---

[4] Although the issue is settled in the Third Circuit, the Court notes that there is some dispute
among other courts as to which party bears the burden when venue is contested.  Fed. R. Civ. P.
12(b)(3); ProModel Corp., v. Story, No. CIV.A. 07-3735, 2007 WL 4124502, at *1 (E.D. Pa
Nov. 19, 2007) (citing Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982); see Simon
v. Ward, 80 F. Supp. 2d 464, 466-68 (E.D. Pa. 2000) (analyzing the dispute over which party
bears the burden in relation to venue, and supporting  the Third Circuit's conclusion in Myers
that it is the defendant's burden to demonstrate that venue is improper).

accept as true the allegations of the pleadings.  Fellner *ex. rel.* Estate of Fellner  v. Philadelphia

Toboggan Coasters, Inc., No. CIV.A.05-2052, 2005 WL 2660351, at *1 (E.D. Pa. Oct. 18, 2005);

see also Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002) (recognizing the same

standard in the context of establishing personal jurisdiction).  Furthermore, "the parties may

submit affidavits in support of their positions, and may stipulate as to certain facts, but the

plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge."  Heft

v. AAI Corp., 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005) (addressing the appropriate legal

standard with which to review a motion to dismiss for improper venue).  Even if it examines

facts outside the complaint to determine venue, the court, however, must draw all reasonable

inferences and resolve all factual conflicts in the plaintiff's favor.  ProModel, 2007 WL 4124502,

at *1.

## IV.    DISCUSSION

        In order to resolve the current Rule 12(b)(3) Motion to Dismiss or, in the Alternative,

Transfer for Improper Venue, the Court first turns to the relevant venue statute for a case

premised on diversity jurisdiction.  The statute, 28 U.S.C. § 1391, provides:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship
> may, except as otherwise provided by law, be brought only in (1) a judicial district
> where any defendant resides, if all defendants reside in the same State, (2) a
> judicial district in which a substantial part of the events or omissions giving rise to
> the claim occurred, . . . or (3) a judicial district in which any defendant is subject
> to personal jurisdiction at the time the action is commenced, if there is no district
> in which the action may otherwise be brought.

28 U.S.C.A. § 1391(a) (2009).  To determine whether venue is proper, the Court will address the

applicability of each subsection of § 1391(a).

### A. § 1391(a)(1) – Boyden Defendants' Respective Residences

Applying the language of § 1391(a)(1) to the case at hand, venue would be proper in this District if at least one of the Boyden Defendants' resides therein and if all of the Boyden Defendants' reside in Pennsylvania.  Both Plaintiff and Boyden Defendants agree that all Defendants reside in Pennsylvania.  (Defs.' Mot. Dismiss § III.A; Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 2.)  Plaintiff further acknowledges that "it appears that the individual [D]efendants [Flannery and Holland] reside within the Western District [of Pennsylvania]," and provides only the individual Defendants' office addresses.  (Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 2.) Plaintiff and Defendants, however, disagree as to the residence of corporate Defendant, Boyden Global Executive Search ("Boyden").

The question of corporate residence is governed by 28 U.S.C. § 1391(c), which provides that:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c) (2009).  The venue inquiry then becomes whether, taking the Eastern District of Pennsylvania as a separate state, Boyden Defendants maintain sufficient contacts with this District as to subject them to personal jurisdiction here.

The Court's personal jurisdiction analysis begins with Federal Rule of Civil Procedure 4(k).  Under Rule 4(k)(1)(A), "a District Court typically exercises personal jurisdiction according to the law of the state where it sits."  O'Connor v. Sandy Lane Hotel Co. Ltd., 496 F.3d 312, 316

8

(3d Cir. 2007) (citing FED. R. CIV. P 4(k)(1)(A)).  The forum state in the present case is

Pennsylvania, and thus the Court turns to Pennsylvania's long-arm statute.  Pennsylvania's long-

arm statute provides its courts with jurisdiction "to the fullest extent allowed under the

Constitution of the United States and may be based on the most minimum contact with this

Commonwealth allowed under the Constitution of the United States."  42 PA. CONS. STAT. ANN.

§ 5322(b) (West 2009); see also Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (analyzing

the extent of Pennsylvania's long-arm statute).  Pennsylvania courts, therefore, may exercise

personal jurisdiction "'to the constitutional limits of the [D]ue [P]rocess [C]lause of the

[F]ourteenth [A]mendment.'" Pennzoil Prod. Co. v. Colelli & Assoc., 149 F.3d 197, 200 (1998)

(quoting Mellon Bank (East) PSFS, Nat. Assoc. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992))

(alteration in original).

      The Due Process Clause requires that "the defendant has 'certain minimum contacts with

. . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice'" O'Connor, 496 F.3d at 316-17 (citing Int'l Shoe Co. v.

Washington, 326 U.S. 310, 316 (1945)).  These due process notions give rise to two types of

personal jurisdiction, specific jurisdiction and general jurisdiction.  Id. at 317.  Specific

jurisdiction "exists when a claim arises from or relates to conduct purposely directed at the forum

state." Marten, 499 F.3d at 297 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466

U.S. 408, 414-15 & n.9 (1984)).  General jurisdiction "exists when a defendant has maintained

systematic and continuous contacts with the forum state," and importantly, the relevant claim

need not arise from those contacts.  Id. (citing Helicopteros, 466 U.S. at 414-415 & n.8.).  The

Third Circuit "[has] always treated general and specific jurisdiction as analytically distinct

categories, not two points on a sliding scale."  O'Connor, 496 F.3d at 321.  Thus, a defendant's contacts must satisfy at least one of these two distinct categories to sustain a court's assertion of personal jurisdiction.  See id. (rejecting the "sliding scale" approach); Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (reaffirming the importance of separate analysis for general and specific jurisdiction).  In other words, if the defendants' contact with the forum fails to satisfy general jurisdiction requirements, "then at least one contact must give rise or relate to the plaintiff's claim."  O'Connor, 496 F.3d at 321.  Given this standard, the Court must determine whether the Eastern District of Pennsylvania could exercise either general or specific jurisdiction over Boyden Defendants.

### a. General Jurisdiction

Whether a court's assertion of general jurisdiction comports with due process  "depends on a defendant having maintained 'continuous and systematic' contacts with the forum state." D'Jamoos ex rel Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 107 (3d Cir. 2009) (citing Helicopteros, 466 U.S. at 415-16).  The activity in the forum state required to assert general jurisdiction must be "significantly more than mere minimum contacts."  Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).  Only contacts that are "'extensive and persuasive,'" will suffice.  Reliance Steel Prod. Co. v. Watson, Ess, Marshall & Engass, 675 F.2d 587, 589 (3d Cir. 1982) (citation omitted).  General jurisdiction, moreover, may be asserted "regardless of whether the subject matter of the cause of action has any connection to the forum."  Pennzoil, 149 F.3d at 199 (quotations omitted).  "In short, this higher threshold demands contacts with the forum which approximate physical presence."  Nationwide Contractor

Audit Serv., Inc. v. Nat'l Compliance Mgmt. Serv., Inc., 622 F. Supp. 2d 276, 284 (W.D. Pa. 2008).

"There are numerous factors courts have used to assess the level of contacts, including the maintenance of offices, assets or employees within the forum state as well as direct advertising and sales into the forum state." Pierce v. Hayward Indus., Inc., No. CIV.A.05-5322, 2006 WL 891149, at *2 (E.D. Pa. Apr. 4, 2006); see also Corp. Aviation Concepts, Inc. v. Multiservice Corp., No. CIV.A.03-3020, 2003 WL 22794693, at *3 (E.D. Pa. Nov. 13, 2003) (enumerating general jurisdiction factors). While the amount of business conducted in the forum is a significant consideration, the "'quality and nature'" of the defendant's contacts serves as the touchstone of general jurisdiction. Pennzoil, 149 F.3d at 203; see also Provident, 819 F.2d at 437 (percentage of business conducted in forum state is less important than the nature of that business). In sum, courts must assess the nature of the defendant's contacts in the forum, and "whether the business dealings are central to the defendant's business and how frequently such dealings occur." Pierce, 2003 WL 22794693, at *3.

In the present case, for the purposes of proper venue determination, the nature and extent of Boyden's contacts[5] with the Eastern District of Pennsylvania are insufficient for this Court to assert general jurisdiction. Rather than "systematic and continuous," Boyden Defendant's contacts with the District are intermittent and isolated. Boyden neither maintains employees or offices nor does it solicit business or target advertisements in the Eastern District.

_____

[5] Since Boyden is a corporation, its contacts with the Eastern District extend vicariously from its agents' actions in the District. See Grand Entm't Group v. Star Media Sales, Inc. 988 F.2d 476, 483 (3d Cir. 1993) ("Activities of a party's agent may count toward the minimum contacts necessary to support jurisdiction.").

While Boyden provides on its website that it is a global company and that its Pittsburgh office services the entire Mid-Atlantic region, which presumably would include the Eastern District, this online representation in and of itself does not provide a basis for general jurisdiction.  "Courts have only exercised general jurisdiction when the defendant itself engaged in extensive local advertising, specifically calculated to attract in-state residents." Hlavac v. DGG Properties, No.CIV.A.04-6112, 2005 WL 839158, at *3 (E.D. Pa. Apr. 8, 2006).  Moreover, Boyden's maintenance of a merely "passive" website that provides general corporate information fails to support the assertion of general jurisdiction. Spuglio v. Cabaret Lounge, No. CIV.A.09-2195, 2009 WL 2917119, at *2 (3d Cir. Sept. 14, 2009) (citing Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)) (applying the Zippo sliding scale approach to determine whether an internet presence may establish personal jurisdiction and noting that asserting personal jurisdiction over "passive" defendants – "those who merely make information available on the Internet" – is improper).  Boyden's web presence and its self-promotion on its own website fall short of the substantial contacts necessary to assert general jurisdiction.  The personal jurisdiction inquiry focuses not on mere commercial representations, but rather on the "quality and nature" of the defendants' contacts.

In that respect, Boyden performs only a small percentage of candidate interviews and obtains a similarly minimal percentage of gross revenue from the Eastern District.  A considerable number of courts within the Third Circuit have found that "deriving a small percentage of . . . revenue and/or having only a small percentage of . . . total market located in the forum was insufficient to confer general jurisdiction."  Nationwide, 622 F. Supp. 2d at 285-86. In his supporting Affidavit, Defendant Flannery provides that Boyden's Pittsburgh office obtains

less than 2% of its gross revenues from the Eastern District.  (Defs.' Mot. Dismiss, Ex. A,

Flannery Aff. ¶ 11.)  Courts dealing with similar and even higher percentages of gross revenues

derived in the relevant forum have declined to assert general jurisdiction.  See, e.g., Gehling v.

St. George's School of Med., Ltd., 773 F.2d 539, 541 (3d Cir. 1985) (general jurisdiction could

not be asserted where 6% of defendant's matriculating students came from Pennsylvania and

defendant held numerous other contacts with the forum); Simplicity, Inc. v. MTS Products, Inc.,

No. CIV.A.05-3008, 2006 WL 924993, at *4 (E.D. Pa. Apr. 6, 2006)  (less than 5% of total sales

over a five year time period falls below "continuous and systematic"); Brown v. AST Sports

Science, Inc., No. CIV.A.02-1682, 2002 WL 32345935, *6 (E.D. Pa. June 28, 2002) (declining

to find general jurisdiction where, among other contacts, defendant corporation shipped 3.7% of

total orders from its website to Pennsylvania).  Thus, Boyden's limited number trips to and its

relationship with a single client in the Eastern District cannot be characterized as continuous or

systematic.[6]

---

[6]  Notably, generating a small percentage of business from a forum, however, does not
conclusively establish a lack of general jurisdiction.  As the Third Circuit determined in
Provident, although less than 1% of a defendant bank's depositors were from Pennsylvania, the
defendant's daily use and maintenance of a Pennsylvania-based  "zero balance," "controlled
disbursement account" "constituted a sufficiently substantial, ongoing, and systematic activity in
Pennsylvania" to assert general jurisdiction. Provident Nat. Bank v. California Fed. Sav. & Loan
Ass'n, 819 F.2d 434, 436 (3d Cir. 1987).
        The present case is distinguishable from the facts in Provident.  In contrast to the
substantial and ongoing use of a bank account in Provident, Boyden's contacts with the Eastern
District are far more sporadic.  Boyden's Pittsburgh office "has made approximately five
interview trips to Philadelphia in the last year, a number that is consistent across most years, out
of usually more than four hundred interviews in any given year."  (Defs.' Mot. to Dismiss, Ex. A,
Flannery Aff. ¶ 11.)   Additionally, Boyden's Pittsburgh office has one former client in
Philadelphia, for whom Boyden conducted a Director search in the previous year.  Id. ¶ 12.
These contacts do not approach the daily activity present in Provident.

Finally, Plaintiff alleges that Boyden engaged in a Joint Defense Agreement with Ardex in Manning's previous action against Ardex (Compl.¶ 33; Compl., Manning v. Ardex, 08-CV-01746 (E.D. Pa. Apr. 11, 2008).  To some extent, however, both Plaintiff and Defendants question the validity of the purported Joint Defense.  (Compl.¶ 33; Defs.' Sur-Reply 1-3.)  Even assuming a bona fide Agreement existed, such an isolated contact in a related but separate action previously before this Court fails to establish general jurisdiction.  Mellon Bank (East) PSFS, Nat. Assoc. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)) (noting that "the parties agree and the facts bear out" that general jurisdiction could not be asserted where the defendants' conduct consisted of entering into three guaranty and suretyship agreements with a Pennsylvania bank). Moreover, the bulk of the actions Defendants took under the purported Joint Defense Agreement – i.e., refusing to answer certain questions during depositions – occurred in the Western District, though the agreement itself was made in relation to a then pending case in the Eastern District. (Defs.' Sur-Reply 1.)  Thus, while the Joint Defense Agreement is a factor in the  general jurisdiction analysis, the Agreement itself does not provide a basis for asserting general jurisdiction.

Taking Boyden's contacts with the Eastern District in their totality, the Court concludes that there exists insufficient contacts for it to assert general jurisdiction. Although Boyden's contacts with the Eastern District for the most part relate to its primary business of performing executive placement services, its level of activity in the District remains too insubstantial to constitute continuous and systematic contacts.  Courts addressing similar levels of contacts, even where those limited contacts relate to the central aspect of defendant's business, have found no basis for general jurisdiction.  See Lesser & Kaplin, P.C. v. Am. Ins. Co., 723 F. Supp. 1099,

1102 (E.D. Pa. 1989) (allegations that defendant occasionally solicited bids from contractors, entered into contracts with such firms, sold bonds indirectly to forum residents, and advertised in publications of general circulation available in Pennsylvania are insufficient for the court to assert general jurisdiction); Olympia Steel Bldg. Sys. Corp. v. Gen. Steel Domestic Sales, No. CIV.A.06-1597, 2007 WL 1217992, at *5-6 (W.D. Pa. Apr. 24, 2007) (noting that defendant's contacts with Pennsylvania were central to its business, but nonetheless finding an insufficient basis to assert general jurisdiction given a corporate defendant's "complete lack of business presence in Pennsylvania, the absence of any advertising directly targeting Pennsylvania residents, the absence of an interactive website directed toward Pennsylvania residents, the absence of any daily or even something approaching daily contact, and the relatively insignificant percentage of business attributable to Pennsylvania residents").  In sum, Boyden's contacts taken in their totality fall short of approximating physical presence, and thus do not provide this Court a basis to assert general jurisdiction.

### b. Specific Jurisdiction

In the absence of general jurisdiction, a court may still be able to assert specific jurisdiction over the defendant.  O'Connor, 496 F.3d at 317.  Courts have established two tests to determine the existence of specific jurisdiction depending on the claims asserted: (1) traditional minimum contacts and (2) the effects test.  The Court considers each separately.

### i. Traditional Minimum Contacts

To determine whether specific jurisdiction exists, courts typically undertake a three part analysis.  D'Jamoos, 566 F.3d at 102; Marten, 499 F.3d at 296; O'Connor, 496 F.3d at 317. "First, the defendant must have 'purposefully directed [its] activities' at the forum."  D'Jamoos,

15

566 F.3d at 102 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985). "Second, the plaintiff's claim must 'arise out of or relate to' at least one of those specific activities." <u>Marten</u>, 499 F.3d at 296 (citing <u>Helicopteros</u>, 466 U.S. at 414). "Third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comports with fair play and substantial justice.'" <u>O'Connor</u>, 496 F.3d at 317 (citing <u>Burger King</u>, 471 U.S. at 476); <u>see also</u> <u>Int'l Shoe v. Washington</u>, 326 U.S. 310, 316 (1945).[7]

The first two elements of the test "determine whether a defendant has the requisite minimum contacts with the forum." <u>D'Jamoos</u>, 566 F.3d at 102. The contacts at issue must demonstrate that the defendant "'purposefully avail[ed] itself of the privilege of conducting activities within the forum'" <u>O'Connor</u>, 496 F.3d at 317 (citing <u>Hanson v. Denckla</u>, 357 U.S. 2235, 253 (1958)), "'such that [the defendant] should reasonably anticipate being haled into court [in the forum state].'" <u>Halim v. Eagle Group Int'l, LLC</u>, No. CIV.A.08-4312, 2008 WL 5377618, at *4 (E.D. Pa. Dec. 23, 2008) (citing <u>World-Wide Volkswagon Corp. v. Woodson</u>, 444 U.S. 266, 297 (1980)). "Physical entrance is not required," <u>O'Connor</u>, 496 F.3d at 317, but a defendant's contacts with the forum generally must be more than "fortuitous or the result of a single transaction." <u>Pennzoil</u>, 149 F.3d at 203 (quotations omitted).

In the present case, Boyden's contacts with the Eastern District do not reach the level of "minimum contacts," and thus the Court cannot assert jurisdiction under this test. Although

---

[7] It is the Third Circuit's "usual practice is to assess specific jurisdiction on a claim-by-claim basis." <u>O'Connor</u>, 496 F.3d at 318 n.3 (citing <u>Remick v. Manfredy</u>, 238 F.3d 248, 255-56 (3d Cir. 2001). However, as the Third Circuit has also concluded "it may not be necessary to do so" for certain factually overlapping claims." <u>Id.</u> Here, the Court finds that Plaintiff's claims all share a basis in tort law and are thus sufficiently similar to be addressed together for the specific jurisdiction inquiry.

Boyden has "purposefully availed" itself of conducting business in the Eastern District of Pennsylvania, none of Plaintiff's claims arise from those activities in the Eastern District. Indeed, as discussed above, Boyden's agents occasionally travel to the Eastern District on business and it obtains some revenue from the Eastern District. O'Connor, 496 F.3d at 318 (concluding that mailing information and trading phone calls to reach an agreement with two Pennsylvania residents constitutes "purposeful contact"). Plaintiff's allegations, however, do not place any of Boyden's actionable conduct in the Eastern District.[8] Rather, all of Plaintiff's claims – counts 1 through 7 – arise from communications between Boyden Defendants and Ardex that appear to have occurred where those two entities are based, the Western District of Pennsylvania. The only contacts with the Eastern District are those mentioned above in relation to the general jurisdiction inquiry. Those facts – Boyden's business contacts in the Eastern District – do not relate to the intentional and negligent torts Defendants allegedly perpetrated or caused, and thus cannot support an assertion of specific jurisdiction.

### ii. Effects Test

Where an injury is the result of an intentional tort, an alternative specific jurisdiction inquiry known as the Calder effects test applies. See Marten, 499 F.3d at 297-98 (explaining Calder test origin). "Generally speaking, under Calder an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient

---

[8] Although Plaintiff, in his Reply to Defendant's Sur-Reply, contends that the purported Joint Defense Agreement between Boyden and Ardex in the previous proceeding before this Court relates to his current breach of fiduciary duty claim, the Complaint only alleges generally that the Joint Defense Agreement interfered with the Plaintiff's evidence gathering in his previous case. Thus, the Court analyzes the Joint Defense Agreement as a contact with the Eastern District solely for general jurisdiction purposes, since Plaintiff's claims in the instant Complaint do not arise from the Joint Defense Agreement.

contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." IMO Indus., Inc. v. Kierkert AG, 155 F.3d 254, 260 (3d Cir. 1998). The Third Circuit has concluded that the Calder effects test allows a court to assert personal jurisdiction if the following conditions are met:

> (1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Marten, 499 F.3d at 297. To satisfy the crucial third prong of the effects test, "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." IMO Indus., 155 F.3d at 266. "If a plaintiff fails to show that the defendant manifested behavior intentionally targeted at and focused on the forum, the plaintiff fails to establish jurisdiction under the effects test." Marten, 499 F.3d at 298 (internal quotation and citation omitted).

In the case at bar, as his sole link to the Eastern District, Plaintiff alleges that he suffered harm in the District as a result of Boyden's actions in the Western District. Plaintiff specifically avers that Boyden intentionally contributed to his firing and intended or knew that a non-compete clause in Plaintiff's employment contract with Ardex would frustrate his efforts to find new employment in the Eastern District. (Compl. ¶¶ 18, 20). Such allegations, however, are insufficient to demonstrate that Plaintiff "felt the brunt of the harm in" the Eastern District of Pennsylvania. The Complaint is devoid of any claim that Plaintiff felt the majority of the impact of his firing in the Eastern District. While the Complaint includes passing references to

18

Plaintiff's inability to obtain employment from "one or more prospective employers" in the Eastern District, Plaintiff's claims relate much more to tortious communications from Boyden to Ardex addressing actions in the Western District and resulting in Plaintiff's firing in the Western District.  See Compl. ¶ 18.  Thus, the Complaint indicates that alleged focal point of harm is the Western District.

Most importantly, Plaintiff has failed to demonstrate that Boyden Defendants "expressly aimed [their] tortious conduct" at the Eastern District.  Relying on an attenuated causation chain, Plaintiff claims that Boyden Defendants intended to first achieve Ardex's firing of Plaintiff, and second, Ardex's enforcement of the non-compete clause that, in turn, would hinder Plaintiff's efforts to obtain future employment in the Eastern District of Pennsylvania.  The communications between Boyden and Ardex that Plaintiff details in his Complaint, however, do not mention any non-compete clause, or evince any express intention of Boyden Defendants to have Ardex enforce such a clause and thereby harm Plaintiff in the Eastern District.  Rather, the communications at issue relate to Plaintiff's alleged interference with the employment search for a new Vice President of Operations for Ardex.  Even if Boyden Defendants knew that Plaintiff could be harmed in his efforts to obtain future employment in areas outside the Western District as a result of his firing, this scenario fails to satisfy the intention requirement of the effects test. See IMO Indus., 155 F.3d at 267 (concluding that even if defendant knew of potential harm to plaintiff in the forum and made limited phone and mail contact with forum-based plaintiff, the Calder effects test was not met, because defendant directed his allegedly tortious interference at a deal being negotiated outside the forum).  Boyden Defendants aimed their allegedly tortious communications at organizations located in the Western District, the site of both Ardex and

19

Boyden's offices.  Moreover, the most immediate result or focal point of Boyden Defendants' actions – Plaintiff's firing – occurred and affected the Plaintiff first and foremost in the Western District.  Thus, on the basis of these contacts with the Eastern District, the effects test is not satisfied.  Accordingly, there is insufficient basis to assert specific jurisdiction over Boyden Defendants in the Eastern District.

In sum, the Court concludes that venue may not be properly premised on § 1391(a)(1), and so the Court turns to § 1391(a)'s next provision, § 1391(a)(2), to determine if it may render venue proper in this District.

### B. § 1391(a)(2) – Transactional Venue

Venue is also proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."  28 U.S.C. § 1391(a)(2).  The leading Third Circuit case to address this provision of the venue statute provides that "[t]he test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" Cottman Transmission Sys., Inc.v. Martino, 36 F.3d 291, 294 (3d Cir. 1994) (concluding that venue in a breach of contract and trademark case was improper in the Eastern District of Pennsylvania, because contract was formed, breach occurred, and trademark infringed all in the Eastern District of Michigan).  The Third Circuit elaborated that "'[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough.  Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.'" ProModel Corp. v. Story, No. CIV.A.07-3735, 2007 WL 4124502, at *2 (E.D. Pa. Nov. 19, 2007) (quoting Cottman, 36 F.3d at 294).  The statutory language, thus, "'favors the defendant in

20

a venue dispute by requiring that the events or omissions supporting a claim be 'substantial.'" Leone v. Cataldo, 574 F. Supp. 2d 471, 484 (E.D. Pa. 2008) (quoting Cottman, 36 F.3d at 294). Furthermore, this transactional venue test requires courts "to look at the nature of the dispute." Cottman, 36 F.3d at 295.  As the court in Leone noted,  "[i]t is appropriate when determining venue for a court to ascertain which of the defendant's acts or omissions gave rise to the claim, and of those acts or omissions, which of them took place in the Eastern District of Pennsylvania." 574 F. Supp. 2d at 484.

Plaintiff argues that venue is proper pursuant to § 1391(a)(2), because Plaintiff "suffered substantial damages in [the Eastern District]" when, as Boyden Defendants allegedly intended, the potential enforcement of the  non-compete clause in his Ardex contract prevented Plaintiff from obtaining employment in this District.  (Pl.'s Resp. Defs.' Mot. Dismiss).  "Economic harm without other substantial activity within the district, however, is insufficient to establish venue under § 1391(a)(2)."  ProModel Corp., 2007 WL 4124502, at *3; see also Loeb, 254 F. Supp. 2d at 587 (rejecting allegations of economic harm in addition to limited mail and telephone correspondence as sufficient to justify venue under § 1391(a)(2)).  Moreover, "'[v]enue will not be proper in a district for a defamation claim if injury is the only event occurring in that district." Dobrick-Pierce v. Open Options, Inc., No. CIV.A.05-1451, 2006 WL 2089960, at *6 (E.D. Pa. July 25, 2006) (quoting DaimlerChrysler v. Askinazi, No. CIV.A.99-5581, 2000 WL 822449, at *6-7 (E.D. Pa. June 26, 2000); see also Lomanno v. Black, 285 F. Supp. 2d 637, 642-43 (E.D. Pa. 2003) (concluding that venue was improper where only injury occurred in the forum, and that proper venue existed in district where defamatory statement was both published and caused harm).

21

Here, Plaintiff's allegation of economic harm as a result of his inability to obtain new employment in the Eastern District falls short of the substantiality requirements of § 1391(a)(2). The events giving rise to Plaintiff's claims, rather, all stem from Boyden Defendants' communications to Ardex and Ardex's resulting firing of Plaintiff, all of which transpired in the Western District. These alleged communications between Ardex and Boyden, which are the crux of Plaintiff's tortious interference (Counts I-III), defamation (Counts IV-V), breach of fiduciary duty (Count VI), and general negligence (Count VII) claims, were either initiated or directed at activity in Boyden and Ardex's offices in the Western District. There is no indication that any of the communications arose in the Eastern District. Moreover, in regards to the defamation claims, injury in the Eastern District without more fails to confer proper venue, particularly when the defamatory statements at issue were published and caused injury in the Western District. See Lomanno, 285 F. Supp. 2d at 642-43; Dobrick-Pierce, 2006 WL 2089960, at *6. In sum, more than a substantial part of the events giving rise to Plaintiff's claim are located outside this District, and thus § 1391(a)(2) does not render venue proper in this Court.

### C. § 1391(a)(3) – Catch-All Provision

Finally, § 1391(a)(3) also fails to provide a basis for venue in the Eastern District. Section 1391(a)(3) functions as a catch-all to provide proper venue in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." In the present case, however, there is a district in which this action may be properly brought.

Section 1391(a)(2) provides a basis for venue in the Western District, since Plaintiff's claims substantially arise from events located in that District. Plaintiff's allegations that Boyden

22

Defendants tortiously interfered with his contractual and business relationships in addition to defaming him all relate to his employment with and subsequent firing from Ardex in the Pittsburgh vicinity.   The communications between Ardex and Boyden underlying Plaintiff's claims took place in Pittsburgh and were directed at Plaintiff's actions in the Western District. Plaintiff's claims arose during Ardex's executive search for a position in its Pittsburgh office. And importantly, Plaintiff suffered the most direct harm in the Western District, where he was in fact fired and allegedly defamed. Section 1391(a)(2) is thus satisfied.  See DaimlerChrysler, 2000 WL 822449, at *6-7.  In turn, § 1391(a)(3) does not apply since venue is proper in the Western District.  See Leob, 254 F. Supp. 2d at 586 (concluding that because there is an alternate district where venue is proper, "§ 1391(a)(3) will not provide a basis for venue in the Eastern District of Pennsylvania . . . .").

### D. Transfer

Because venue in this District is improper,  28 U.S.C. § 1406(a) becomes applicable. 28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Section 1406(a), thus, "enables the court to correct an erroneous venue choice without resorting to the harsh remedy of dismissal." Pennsylvania Gear Corp. v. Fulton, No. CIV.A.98-1538, 1999 WL 80260, at *3-4 (E.D. Pa. Jan. 26, 1999) (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962)) (transferring case to forum where venue and jurisdiction were proper;  see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (3d ed. 2009) (28 U.S.C. § 1406(a) "enables the district judge to correct an erroneous venue choice in a manner that does not

23

damage the plaintiff's ability to maintain his action.").  Since both venue and jurisdiction is proper in the Western District of Pennsylvania, the Court concludes that it is in the "interests of justice" to transfer this case to the Western District..

**V.      CONCLUSION**

According to the rationale set forth above, the Court denies Defendants' Motion to Dismiss Plaintiff's Complaint, but, as a result of the lack of venue in this District, the Court grants Defendants' alternative Motion to Transfer this case to the Western District of Pennsylvania.

An appropriate order follows.

24