IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J. STEVEN MANNING, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10 - 178 |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo |
| | ) | Lenihan |
| THOMAS T. FLANNERY, *et al.*, | ) | |
| | ) | ECF No. 76 |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM ORDER ON PLAINTIFF'S MOTION
## TO ALTER OR AMEND JUDGMENT PURSUANT TO RULE 59(e)

Currently pending before the Court is Plaintiff's Motion to Alter or Amend Judgment (ECF No. 76) pursuant to Federal Rule of Civil Procedure 59(e) (Motion for Reconsideration) of the Court's Order of March 31, 2012 granting summary judgment in favor of Defendants, and the Judgment entered on April 13, 2012 in favor of Defendants and against Plaintiff. In particular, Plaintiff seeks reconsideration of the Court's rejection of all of his claims other than the breach of fiduciary duty claim.

A motion to alter or amend judgment under Rule 59(e) includes a motion for reconsideration where, as here, the plaintiff is asking the Court to reconsider and vacate the aforesaid Order and Judgment. 11 C. Wright, A. Miller, & M. Kane, FED. PRACTICE & PROCEDURE: CIVIL 2D § 2810.1, p. 122 & n. 8 (2d ed. 1995 & 2011 Supp.) (citing *Villanueva-Mendez v. Nieves Vazquez,* 360 F.Supp.2d 320 (D. P.R. 2005); *Waye v. First Citizen's Nat'l Bank,* 846 F.Supp. 310 (M.D.Pa. 1994)) (other citations omitted). The court of appeals for this circuit has delineated the following standard to be applied in deciding motions for

1

reconsideration:

> "The purpose of a motion for reconsideration," we have held, "is to
> correct manifest errors of law or fact or to present newly
> discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906,
> 909 (3d Cir.1985). Accordingly, a judgment may be altered or
> amended if the party seeking reconsideration shows at least one of
> the following grounds: (1) an intervening change in the controlling
> law; (2) the availability of new evidence that was not available
> when the court granted the motion for summary judgment; or (3)
> the need to correct a clear error of law or fact or to prevent
> manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance
> Co.*, 52 F.3d 1194, 1218 (3d Cir.1995).

*Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999); *see
also Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,* 602 F.3d 237, 251 (3d Cir. 2010)
(citing *Max's Seafood Café, supra*).

A moving party relying on the third ground should carefully consider whether the
perceived clear error of law is in reality just a point of disagreement between the court and the
party, as the latter is not an appropriate basis for reconsideration. *Waye,* 846 F.Supp. at 314 n. 3
(citation omitted). In addition, a Rule 59(e) motion may not be employed to reargue matters
already decided by the court. *Id.* at 314 (citation omitted); *Exxon Shipping Co. v. Baker,* 554
U.S. 471, 486 n. 5 (2008) (citing FED. PRACTICE & PROCEDURE § 2810.1, pp. 127-28). Nor may
a Rule 59(e) motion be used to raise arguments or present evidence that could have been raised
prior to entry of judgment. FED. PRACTICE & PROCEDURE §2810.1 at pp. 127-28 & n. 21 & 22.
Granting a motion for reconsideration is an extraordinary remedy, and therefore, is done
sparingly. *D'Angio v. Borough of Nescopeck,* 56 F.Supp. 2d 502, 504 (M.D.Pa. 1999) (citing
*NL Indus. v. Commercial Union Ins.,* 935 F.Supp. 513 (D.N.J. 1996) (other citation omitted));
*see also* FED. PRACTICE & PROCEDURE §2810.1 at p. 124 & n. 13.

In support of his motion for reconsideration, Manning hangs his hat on the third ground, arguing that reconsideration is appropriate here to correct a clear error of law and fact and/or to prevent manifest injustice.   However, after reviewing Manning's supporting brief, the Court finds that the alleged clear errors of law and fact are nothing more than a disagreement with the Court's rulings.

### Defamation Claims

With regard to his defamation claims (Counts IV and V), Plaintiff takes issue with the Court's conclusion that "no reasonable jury could find, based on the record evidence, that Defendants abused a conditional privilege.   Plaintiff raises three arguments in support of reconsideration of this ruling.  First, Plaintiff contends the Court applied a stricter legal standard by not considering whether the publication of the alleged defamatory statement was done negligently.  Contrary to Plaintiff's argument, this Court did apply the correct legal standard for abuse of privilege—the Court relied on the standard enunciated by the Pennsylvania Superior Court in *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1269 (Pa. Super. Ct. 2005):

> Abuse of a conditional privilege is indicated when the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or included defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.

*See* Opinion dated 3/31/12 at 37 (ECF No. 73).    In applying this standard to the summary judgment record in the case at bar, the Court focused on whether Plaintiff had proffered evidence of malice and/or recklessness because that was the focus of Defendants' argument and Plaintiff's response in opposition.  Plaintiff did not argue in either of his opposition briefs that publication of the "don't tell Tom" statement was actuated by negligence on Defendants' part.

Indeed, in his memorandum of law in opposition to summary judgment (ECF No. 57), Plaintiff sets forth his argument regarding "privilege" on pages 16-20, and nowhere in that section does he set forth the standard for abuse of privilege,[1] let alone argue that he has shown that the publication of the "don't tell Tom" statement was actuated by Defendants' negligence. In his sur-reply brief, Plaintiff again relies on his discussion of privilege at pages 16-20 of his brief in opposition (ECF No. 57), and then goes on to argue that "[i]f the jury believes Angelo that she made no such statement [don't tell Tom] to Holland, then the falsity of Holland's statement is manifest and a jury could find that Holland *intentionally or recklessly* reported a false account of her conversation with Angelo, *with the intent to harm* plaintiff."   Pl.'s Sur-Reply at 3-4 (ECF No. 68) (emphasis added).   Clearly, Plaintiff's use of the words "intentionally," "recklessly" and "with the intent to harm" do not imply a negligence standard.  It is not the Court's role to analyze the evidence under standards neither argued nor briefed by the parties.   Moreover, this argument was available to Plaintiff at the time he responded to Defendants' summary judgment motion but he failed to raise it.  Therefore, he cannot assert this argument for the first time in a motion for reconsideration.  *Federico v. Charterers Mut. Assur. Ass'n Ltd.,* 158 F.Supp. 2d 565, 578 (E.D.Pa. 2001) (citations omitted).

Next, Plaintiff attempts to get around his failure to establish that Defendants abused their conditional privilege in publishing the "don't tell Tom" statement by now arguing that a showing of negligence required to prove a defamation claim is also sufficient to overcome the conditional privilege.  Plaintiff goes on to argue that the record contains abundant facts from which a finding of negligence can be made on the part of Holland and Flannery.  *See* Pl.'s Mem. in Supp. of Reconsideration at 9-10 ("Pl.'s Reconsid. Mem."), ECF No. 77.  Plaintiff's argument is flawed in

---

[1] As noted in this Court's Opinion dated 3/31/12 at 38 (ECF No. 73), "[m]uch of Plaintiff's counterargument regarding privilege as a defense to defamation is combined with his argument regarding

several respects.  Although he correctly states Pennsylvania law on defamation,[2] Plaintiff fails to acknowledge that neither he nor Defendants provided any argument to the Court on summary judgment as to whether he had established the prima facie elements of his defamation claims. Rather, the only question raised and briefed on the merits of the defamation claims was whether the "don't tell Tom" statement was capable of defamatory meaning.  Thus, because there was no argument or ruling on whether Defendants had negligently communicated the "don't tell Tom" statement as part of Plaintiff's prima facie case of defamation, Plaintiff's reliance on *American Future Systems* and *Pacitti, supra,* and the cases cited therein, is misplaced.[3]

---

lack of privilege for purposes of his intention[al] interference claims."

[2] In *Pacitti v. Durr,* 310 F. App'x 526 (3d Cir. 2009), the court of appeals aptly summarized Pennsylvania law on defamation and conditional privilege:

> To establish a defamation claim under Pennsylvania law, Plaintiffs needed to prove that Durr published defamatory material in a negligent manner. *American Future Sys., Inc. v. BBB of Eastern Pa.*, 592 Pa. 66, 923 A.2d 389, 400 (2007); *see also Joseph v. Scranton Times L.P.*, 959 A.2d 322, 342 (Pa.Super.2008). Negligence in this context is the publication of information with a want of reasonable care to ascertain the truth. *Joseph*, 959 A.2d at 342 (citing *Rutt v. Bethlehems' Globe Publ'g Co.*, 335 Pa.Super. 163, 484 A.2d 72, 83 (1984)). Although Pennsylvania law has historically recognized a conditional privilege for "[c]ommunications which are made on a proper occasion, from a proper motive, in a proper manner, and which are based upon reasonable cause," *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1268 (Pa.Super.2005) (citation omitted), a plaintiff can, by establishing negligence, show that the defendant abused any such privilege. *See Banas v. Matthews International Corp.*, 348 Pa.Super. 464, 502 A.2d 637, 638-39 (1985). Thus, under current Pennsylvania law, a showing of negligence is both required for a plaintiff to prove a defamation claim and sufficient for a plaintiff to overcome the conditional privilege provided by state law. *See American Future Sys.*, 923 A.2d at 397. The Pennsylvania Supreme Court recently noted that, because a plaintiff can overcome state law conditional privileges simply by proving a defamation claim, the conditional privileges have "lost their significance" and become "superfluous." *Id*. at 397-98 (citation omitted).

*Id.* at 528.

[3] Plaintiff cites those cases for the general proposition that a plaintiff can overcome state law conditional privileges just by proving a defamation claim.   These cases are inapposite here where in opposing summary judgment, Plaintiff was not required to establish the prima facie elements of his defamation claims, nor did he.   Thus, proof of negligence to show abuse of a conditional privilege was not superfluous where, as here, negligence in publishing the statement had not previously been established.

Next, Plaintiff lists factors that he contends give rise to a finding of negligence on the part of Holland, Flannery and Boyden[4] in publishing the "don't tell Tom" statement.  However, it is irrelevant at this juncture whether these factors support a finding that Defendants negligently communicated the "don't tell Tom" statement, thereby showing that Defendants abused their conditional privilege.  As this Court held above, Plaintiff failed to argue that these factors supported a finding of negligent communication vis a vis the conditional privilege defense in opposing summary judgment.  Consequently, Plaintiff cannot raise this argument for the first time in a motion for reconsideration.  *Federico,* 158 F.Supp. 2d at 578.

In any event, Plaintiff did argue at the summary judgment phase that two of these factors supported a finding of negligence under Section 302A of the Restatement (Second) of Torts.  In his initial memorandum opposing summary judgment, as evidence of negligence, Plaintiff proffered the failure of Flannery to determine whether Holland's recitation of the Angelo conversation was accurate.  Pl's Mem. in Opp'n to Summ. J. at 25, ECF No. 57.  *Compare* Pl's Reconsid. Mem. at 10, Flannery's Negligence, Part I.  In his sur-reply memorandum, Plaintiff proffered that no internal controls or procedures existed at Boyden or were put in place by Flannery to determine whether Holland's version of the Angelo conversation was accurate.  Pl.'s Sur-Reply to Defs.' Reply Mem. (Pl.'s Sur-Reply Mem.") at 5, ECF No. 68.  *Compare* Pl.'s Reconsid. Mem. at 10, Flannery's Negligence, Part iv.   The Court fully considered whether these two factors raised a triable issue of fact as to Plaintiff's negligence claim and concluded that they did not.  *See* Opinion dated 3/31/12 at 55-59, ECF No. 73.  Thus, to the extent Plaintiff's argument relies on these two factors, it is simply a rehash of a previously made argument and not an appropriate basis for reconsideration.

---

[4] *See* Pl.'s Reconsid. Mem. at 9-10, ECF No. 77.  Most of these factors were proffered by Plaintiff in opposing Defendants' argument that they did not act maliciously or recklessly when they communicated

Finally, Plaintiff contends that the summary judgment record would allow a jury to find that Holland, Flannery and Boyden acted maliciously and/or in reckless disregard of Plaintiff's interests in communicating the "don't tell Tom" statement to Gundlach and others, thus proving that Defendants abused their conditional privilege.   In support, Plaintiff advances several arguments.   First, Plaintiff contends that his responsive concise statements of material facts at paragraphs 12, 25, 39, 45, 48, 52, 54-55, 59-60, 69, 72-73, and 76, clearly would allow a jury to infer or conclude that Defendants acted maliciously or in reckless disregard of Plaintiff's rights. Pl's Reconsid. Mem. at 12-17, ECF No. 77.   However, Plaintiff previously advanced this argument in opposing summary judgment, *see* Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 16-18, ECF No. 57,[5] to no avail.   Plaintiff fails to point to any clear errors of law or fact which would support granting the motion for reconsideration on this point.

Next, Plaintiff reiterates several arguments previously raised in opposing summary judgment:  (1) that merely by a jury believing Angelo over Holland, that alone proved that Holland deliberately misreported what Angelo said; (2) that Flannery's statement that Holland was "an accurate reporter" could be "viewed with skepticism" and rejected by a jury; and (3) that Defendants' motivation is a jury issue and the jury could have determined that Defendants acted for an improper purpose.   The Court fully considered all of these arguments in its summary judgment opinion and rejected them.   *See* Opinion dated 3/31/12 at 39 & n. 18, 40-41, 45-46, 57 n.22.   On reconsideration, Plaintiff simply rehashes his previous arguments and fails to point to any clear errors of law or fact which would support granting reconsideration.

---

the "don't tell Tom" statement to Gundlach and Nevin.
[5] As noted in this Court's 3/31/12 Opinion at 38, Plaintiff's counter argument regarding privilege as a defense to defamation is combined with his argument regarding lack of privilege for purposes of his intentional interference claims.

Third, Plaintiff contends that this Court's analysis failed to consider that a jury may find the "don't tell Tom" statement to be false and that Defendants recklessly or negligently communicated that statement to Gundlach and others.   Specifically, Plaintiff cites several findings he contends the jury could make from the record evidence.  *See* Pl.'s Reconsid. Mem. at 16-17, ¶¶ a – j, ECF No. 77.  However, this Court did analyze most of these possible findings by the jury in its summary judgment opinion and found no merit to Plaintiff's argument.  *See* Opinion dated 3/31/12 at 39-40 (as to ¶¶ a & b), 41 & 46 (as to ¶ e), 41 (as to ¶ f (Flannery only), h & i), 56-58, 57 n. 22 (j).  Other possible findings (¶¶ c, d & g) are pure speculation and not supported by the record.[6]

In addition, Plaintiff argues for the first time on reconsideration that a jury could well determine that the communication of the "don't tell Tom" statement to Gundlach would likely have a foreseeable devastating effect on Plaintiff, and therefore, Holland had a duty to ensure she correctly understood Angelo's message.   Although Plaintiff advanced a similar argument with regard to Flannery, *see* Opinion at 39-41, 56-58, and 57 n.22, he made no such argument as to Holland in opposing summary judgment.   As this argument could have been raised by Plaintiff at the summary judgment stage, it cannot be raised for the first time on reconsideration.  FED. PRACTICE & PROCEDURE §2810.1 at pp. 127-28 & n. 21 (main vol. & 2011 Supp.) (citing *Vallejo v. Santini-Padilla,* 607 F.3d 1, 7 n.4 (1st Cir. 2010); *Kona Enter., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000)) (other citations omitted).

Also unavailing is Plaintiff's reliance on *Donaldson v. Informatica Corp.,* Civ. A. No. 08-605, 2009 U.S. Dist. LEXIS 118916 (W.D.Pa. Dec. 22, 2009), in support of his position that

---

[6] Also speculative is Plaintiff's contention that it is unlikely Holland misunderstood the voice mail message Angelo left as Holland could have replayed it any number of times to confirm the message if she had a bona fide interest in doing so.  *See* Pl.'s Reconsid. Mem. at 16.  The record does not support such a finding.

the Court mistakenly usurped the function of the jury in determining that Flannery's actions with regard to the alleged defamatory statement were conditionally privileged on the basis that Defendants' actions could not be found to have been motivated by malice or were in reckless disregard of Plaintiff's interests.  Similar to the case at bar, the plaintiffs in *Donaldson* argued in support of a motion for reconsideration that the court usurped the function of the jury in determining that the defendant did not abuse his conditional privilege in granting summary judgment.  *Id.* at \*5.  Although the district court in *Donaldson* recognized that generally under Pennsylvania law, whether a privilege has been abused in a given case is a question of fact for the jury, it nonetheless concluded that the  plaintiffs in that case did not point to record evidence sufficient to create a genuine issue of material fact as to malice.  *Id.*  Thus, the *Donaldson* court found there was no question for the jury to decide on the issue of privilege.  *Id.* at \*6.  Likewise here, the Court found that the record did not contain sufficient evidence to create a genuine issue of material fact as to whether Flannery maliciously or recklessly communicated the "don't tell Tom" statement.  *See* Opinion dated 3/31/12 at 39 & n. 18, 40-41.  As Plaintiff has failed to develop this argument, the Court need not dwell on this issue further.

In summary, what Plaintiff perceives to be clear errors of law and/or fact is, in reality, a disagreement with the Court's conclusions and, as such, is not an appropriate basis for reconsideration.   *Waye,* 846 F.Supp. at 314 n. 3; *see also Donaldson,*  2009 U.S. Dist. LEXIS 118916, at \*3 (citing *Ostroff v. Alterra Healthcare Corp.,* Civ. A. No. 05-6187, 2006 WL 2086970, at \*3 (E.D.Pa. July 25, 2006)).

### Intentional Interference With Existing Contracts/Business Relationships

Plaintiff also seeks reconsideration of the Court's ruling on his claim for intentional interference with existing contractual/business relationships, arguing primarily that the Court's

conclusion that "the advice was honest" pre-empts a jury determination of same.[7]   In support,

Plaintiff asserts that the Responsive Concise Statements of Material Fact ("CSMFs") identified

in footnote 3 of his reconsideration memorandum abundantly illustrate that a fact finder could

easily determine that Defendants were not giving "honest advice."[8] The Court previously

considered this argument in deciding the motion for summary judgment and rejected it.  *See*

Opinion dated 3/31/12 at 45-47.   Plaintiff's conclusory characterizations of Defendants'

advice/opinions as "dishonest" or "toxic" do not constitute evidence at all.  Thus, when the Court

weeded out the conclusory characterizations of the evidence interspersed throughout the factual

allegations contained in Plaintiff's Responsive CSMFs referenced above, the Court concluded

that the factual allegations were insufficient to allow a reasonable jury to conclude that the

advice given by Defendants was either dishonest or not within the scope of advice requested by

Gundlach. *See* Opinion dated 3/31/12 at 45-47.

        In support of reconsideration, Plaintiff attempts to show a triable issue of fact exists as to

whether Defendants' advice/opinions were dishonest by citing to Flannery's deposition

testimony wherein he acknowledged making the statement in his 3/6/08 memo to Gundlach that

Plaintiff "has been insubordinate in his behavior," but could not provide any basis for that

statement at his deposition.  Plaintiff asserts that this deposition testimony demonstrates that the

---

[7] Plaintiff also advances an argument regarding whether a defamatory statement can be conditionally privileged and whether such privilege existed with regard to Defendants.  *See* Pl.'s Reconsid. Mem. at 19-20, ECF No. 77.  This argument has no application to Plaintiff's intentional interference claims. Moreover, Plaintiff advanced this argument in support of reconsideration with regard to his defamation claims but the Court rejected it as he failed to raise it prior to entry of judgment.

[8] The Responsive CSMFs identified in footnote 3 are the same ones relied on by Plaintiff in his memorandum in opposition to summary judgment,  and specifically include Responsive CSMF ¶¶52, 13, 29, 34, 36, 39, 45-46, 48, 54-55, 59-60, 67, 69-70, 72-73, 76 and 78, as well as Defendants' CSMF ¶52. This alleged conduct, according to Plaintiff, consisted of, *inter alia*, "the panoply of successful efforts by the [Defendants] to undermine the plaintiff and cause his firing by Ardex, L.P., by means of secret communications between [Defendants] and Gundlach/Nevin and the conveying of toxic and unfounded opinions . . . ."  Pl.'s Mem. in Opp'n to Summ. J. at 12, ECF No. 57.

opinion was made in bad faith and for the purpose of undermining Plaintiff, and therefore was dishonest.  Just because Flannery could not provide a reason on the spot at his deposition does not lead to the inference that he was being dishonest, especially when the Court considers the other evidence in the record, i.e., numerous emails between Flannery and Gundlach referencing instances where Plaintiff was believed to be working in his own best interests as opposed to those of Ardex in the search for a new VP Ops.  Even if Flannery's testimony could be construed as evidence of bad faith or  an improper purpose, this goes to improper intent, which is irrelevant for purposes of determining whether Section 772(b) of the RESTATEMENT (SECOND) OF TORTS applies.

Finally, Plaintiff argues that in opposing summary  judgment, his discussion of privilege as it related to the intentional interference claim stated in relevant part:   "' . . . **the false statements made** evidenced such improper intent as does their surreptitious conduct and the rendering of the their (sic) toxic and dishonest opinions.'"  Pl.'s Reconsid. Mem. at 21, ECF No. 77 (quoting ECF No. 57 at 18) (emphasis in original).  Plaintiff submits that the false statement specifically identified was the "don't tell Tom" statement, however, nowhere in the Court's analysis did it consider that a jury could find that Defendants presented false statements (e.g. "don't tell Tom") to Gundlach to bolster and provide ammunition to Gundlach to cause the firing of Plaintiff and to serve Defendants' self-interests.  Rather,  Plaintiff contends the Court focused on whether "opinions and advice" given to Gundlach by Defendants was "honest and truthful." Thus, Plaintiff submits that the Court erred in concluding that no issues of material fact were presented with regard to whether the advice and opinions given by Holland and Flannery to Gundlach were honest.

This  argument  comes  too  late.  In  his  memorandum  opposing  summary  judgment,

Plaintiff identified the Responsive CSMFs which he claimed demonstrated the improper intent of Defendants, which included the Angelo-Holland conversations and the "don't tell Tom" statement. Pl.'s Mem. in Opp'n to Summ. J. at 17, ECF No. 57. However, Plaintiff never argued in either his opposition memorandum or sur reply that the alleged false "don't tell Tom" statement raised an issue of fact as to whether Section 772 of the RESTATEMENT (SECOND) OF TORTS applied. Rather, Plaintiff focused his counterargument on showing evidence of Defendants' improper intent, based on the test set forth in *Kachmar*, which this Court determined was irrelevant for purposes of determining whether the criteria for §772 had been met. Opinion dated 3/31/12 at 46. Moreover, Defendants' privilege argument focused upon §772(b) – "Honest Opinions or Advice", and indeed, so did Plaintiff's response. Now for the first time on reconsideration does Plaintiff take the Court to task for failing to analyze alleged false statements, i.e., the "don't tell Tom" statement, under §772(a) – "Truthful Information." The Court is not required to consider arguments not advanced by the parties. Thus, Plaintiff's contention that the Court erred in not considering whether a jury could find Defendants presented false statements to Gundlach, for purposes of §722, is untimely. As Plaintiff may not raise arguments for the first time on reconsideration when they were available prior to judgment, reconsideration of Plaintiff's claim for intentional interference with existing contractual/business relations is inappropriate.[9]

## Intentional Interference with Prospective Contractual/Business Relationships

---

[9] In addition, Plaintiff now argues that a jury could determine, *inter alia,* that a deliberate false reporting of the "don't tell Tom" statement belied any claim of "honest advice" advanced by any of the Defendants. This argument does not support reconsideration. Plaintiff raises this argument for the first time on reconsideration, which he cannot do. Also, this Court already determined that Plaintiff has failed to show a triable issue exists as to whether Defendants acted maliciously or recklessly with regard to his defamation claims, and has declined Plaintiff's request for reconsideration of that claim.

In essence, Plaintiff disagrees with the Court's conclusion that the record does not establish the existence of a prospective business relationship in the first instance.  He contends that in order to prove this element of his claim, expert testimony is needed and the parties were instructed to defer preparation of their expert reports until after the summary judgment motion was decided.  Consequently, Plaintiff submits that he deferred from obtaining an expert to opine that he was effectively disabled from obtaining executive employment given the circumstances of his being fired by Ardex.  He now requests thirty days to obtain an expert report which would address his failure to obtain further executive employment.  This argument is not only the proverbial red herring but is also inaccurate. It is this Court's practice to allow the parties to delay the expense of hiring expert witnesses until after dispositive motions are decided. However, this Court did not in this case, nor does it in any cases, forbid counsel from hiring expert witnesses. In fact, at the conference which took place on May 2, 2011, the parties and the Court discussed the issue of expert reports. The Court asked if expert reports were needed prior to summary judgment. Neither counsel responded in the affirmative. The docket entry on this date indicates that, following a decision on dispositive motions, the parties would need time for liability expert reports as well as expert discovery. Plaintiff did not at any time request that he be given an opportunity to retain an expert on this issue or any other issues prior to dispositive motions.

In addition, Plaintiff's argument misses the mark. As Defendants have argued, a prospective business relationship requires an actual intent to hire or contract with the plaintiff. An expert's opinion as to what is likely to happen or what might have happened is not sufficient. Plaintiff fails to cite any authority to support his position that an expert's opinion can establish the existence of a prospective business relationship.  Nor does he identify any clear legal or

factual errors in the Court's 3/31/12 Opinion on this issue.  Therefore, as this Court has already thoroughly analyzed the record evidence and the parties' arguments as to Plaintiff's claim for intentional interference with prospective contractual relations, *see* Opinion dated 3/31/12 at 48-52, and Plaintiff raises nothing new in his motion for reconsideration, the Court declines to reconsider its ruling on this claim.

## Negligence Claim

In his motion for reconsideration, Plaintiff submits that the Court's analysis of his negligence claim was devoid of any consideration as to whether Holland was negligent.  Plaintiff is correct in his observation, however, the Court analyzed the arguments presented to it.  In their opening brief in support of summary judgment, Defendants argued (1) that the negligence claim was subject to the same one year statute of limitations as the defamation claim, an argument this Court rejected, and (2) that Plaintiff's negligence claim was flawed because there was no such tort as negligent interference with contract.  As to Defendants' second argument, Plaintiff responded that Defendants misapprehended his position and clarified that his negligence claim was predicated upon Section 302A of the RESTATEMENT (SECOND) OF TORTS.  Plaintiff then posited, based on Section 302A, that a jury may find that *Flannery*, in failing to determine whether Holland was accurate in her recitations to him concerning the Angelo discussions and voice mail, was negligent.  Pl.'s Mem. in Opp'n to Summ. J. at 25, ECF No. 57.  In his sur-reply memorandum, Plaintiff presented a new theory for his negligence claim—Boyden's alleged failure to have internal controls or procedures in place which would have attempted to determine whether Holland's version of her conversation with Angelo were accurate.  Pl.'s Sur-Reply Mem. at 5, ECF No. 68.  The only mention of any alleged negligence of the part of Holland is found in a single sentence on page 5 of his sur-reply memorandum, in which Plaintiff submits

that Nevin's grilling of Holland "does not excuse Holland from any negligence in her misreporting of the Angelo conversation . . .." *Id.* As this Court previously held, it is not required to consider undeveloped arguments, which are lacking any legal or factual support. *See* Opinion dated 3/31/12 at 58-59 and cases cited therein. Therefore, Plaintiff's argument in support of reconsideration of his negligence claim is completely unavailing.

In summary, Manning's motion for reconsideration either rehashes arguments previously made, or attempts to assert arguments available to him at the summary judgment stage but not made. As to those arguments raised by Manning and previously considered by the Court in ruling on the Defendants' motion for summary judgment, the Court set forth in detail its legal conclusions and reasoning in its 3/31/12 Opinion, and consequently, sees no reason to revisit those issues here. New arguments presented for the first time on reconsideration, which could have been raised prior to judgment, are inappropriate for reconsideration. As Manning has failed to demonstrate any clear errors of law or fact to support reconsideration and reversal of the Court's previous rulings, the Court will deny the Plaintiff's motion to alter or amend judgment.

Accordingly, the Court enters the following Order:

AND NOW, this 14th day of June, 2012, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) (Motion for Reconsideration) is **DENIED**.

BY THE COURT:

_____

LISA PUPO LENIHAN

15

Chief United States Magistrate Judge

cc:    All Counsel of Record
       *Via Electronic Mail*